United States District Court
Middle District of Florida
Jacksonville Division

**DEVELOPERS SURETY & INDEMNITY CO.,**

>    *Plaintiff,*

v.                                                      **NO. 3:15-cv-655-J-34PDB**

**LEWIS WALKER ROOFING ETC.,**

>    *Defendants.*

---

## Report & Recommendation

Before the Court are Developers Surety & Indemnity Co.'s ("Developers Surety's") motions for summary judgment against Lewis and Heather Walker and their roofing company, Lewis Walker Roofing, Inc. ("Walker Roofing"), Doc. 20, and for default judgment against Walker Roofing, Doc. 29. The motion for default judgment followed the motion for summary judgment and the clerk's entry of default against Walker Roofing for failure to appear through counsel. Doc. 23; Doc. 24; Doc. 25. The Walkers appeared without counsel at the beginning of the action, but no one appeared for any defendant at a recent status conference. Doc. 30. At that conference, Developers Surety's counsel advised the Court he could not reach the Walkers. Doc. 30. No one has responded to the motions. A bench trial is scheduled for the October 2016 trial term. Doc. 32.

## I.    Pleadings

In the amended complaint, Developers Surety alleges it is an Iowa corporation with its principal place of business in California, Walker Roofing is a Florida

corporation with its principal place of business in Florida, and the Walkers are Florida citizens. Doc. 5 ¶¶ 1–4. The Court found it has subject-matter jurisdiction after Developers Surety amended the complaint to cure pleading deficiencies. Doc. 4; Doc. 5; Doc. 6.

In the amended complaint, Developers Surety asserts three claims against each defendant, jointly and severally, and asks for damages and equitable relief. Doc. 5 ¶¶ 15–38. They are based on an indemnity agreement related to Developers Surety's provision of bonds for a project by Walker Roofing at Valdosta State Prison and ensuing litigation by Developers Surety against the Georgia Department of Corrections in the Georgia court system. Doc. 5 ¶¶ 15–38. Count one is for specific performance. Doc. 5 ¶¶ 15–23. Count two is for breach of contract. Doc. 5 ¶¶ 24–32. Count three is for common law indemnity. Doc. 5 ¶¶ 33–38.

In the answer, the Walkers do not specifically admit or deny any allegation. *See generally* Doc. 10. They explain they had fully cooperated when Developers Surety stood in their shoes and sought recovery from the Georgia Department of Corrections in the Georgia court system and were led to believe they were neither at fault for any construction issue nor indebted to anyone. Doc. 10 ¶¶ 1–3. They explain their financial condition:

> We do not have funds to hire a lawyer to fight this kind of case. We obviously don't have funds to pay the amount of money we are being sued for. Since 2009 we have taken some large losses with the economy. We have been on the verge of bankruptcy several times, but have managed to avoid it by the grace of God. We live simple lives and provide for our needs. We still have over 500K in bad debt that we are working to pay off $50.00 at a time. Our roofing company is our only means of income and we are doing everything we can to keep a company in business in spite of lawsuits like this.

2

Doc. 10 ¶ 4. They conclude, "I know [we] have not responded with all the proper legal words and procedures, but all I know is to tell the truth here. I feel we were deceived about having any money owed and were led to believe this was a done deal after the court case [between Developers Surety and the Georgia Department of Corrections]. I know the outcome of the situation is out of my hands and control. All I can ask is for you to do what is right." Doc. 10 ¶ 4.

## II.   Entry of Default

The Walkers appeared by telephone at a status conference in August 2015 to discuss the requirement that counsel represent Walker Roofing.[1] Doc. 15. Mr. Walker reasserted he could not afford counsel and explained he did not have the education or skill to defend the case. He opined the case would be a waste of time and money given the defendants' limited assets and suggested bankruptcy was likely.[2] Doc. 15. Counsel expressed Developers Surety's desire to proceed to judgment regardless of any likelihood of recovery.

At that status conference, the Walkers moved for permission to represent Walker Roofing themselves. Doc. 15; Doc. 16. Developers Surety opposed the motion. Doc. 18. The Court denied the motion and directed Walker Roofing to retain counsel and have counsel file an appearance by the due date for any response to the summary judgment motion. Doc. 23 at 1–2. The Court warned, "Its failure to do so will result

---

[1]There is no transcript of the August 2015 status conference. A party may order one if interested. A digital recording is available for the Court's use.

[2]Public records indicate no defendant has filed a bankruptcy action and Walker Roofing is still an active Florida corporation, *see* Fl. Dept. of State Div. of Corps., https://perma.cc/8QNN-SKNM.

in entry of default against it." Doc. 23 at 2. When no counsel appeared, the Court directed the clerk to strike the answer to the extent it was filed by Walker Roofing and enter default against Walker Roofing. Doc. 24. The clerk did. Doc. 25. Developers Surety served Walker Roofing with the subsequent motion for default judgment. Doc. 29 at 17.

## III.   Summary and Default Judgment Motions

In the motions for summary and default judgment, Developers Surety proceeds only on the breach-of-contract claim against each defendant, jointly and severally, and seeks only damages ($309,488.91), that include attorney's fees and costs for the state litigation and this action. *See generally* Doc. 20; Doc. 29. It provides the same supporting documents and makes nearly the same arguments to support the motions. *Compare* Doc. 20 *with* Doc. 29. The documents are (1) the indemnity agreement, Doc. 20-1; Doc. 29-2, (2) the bonds, Doc. 20-2; Doc. 29-3, (3) an affidavit of Susan Moore, Developers Surety's Senior Vice President of Claims, Doc. 20-3; Doc. 29-4, (4) an affidavit of Patrick Barker, Developer Surety's Subrogation Manager, Doc. 20-4; Doc. 29-5, and (5) an affidavit of Joseph Wolenski, Esquire, an attorney with Thompson & Slagle, including a billing ledger, Doc. 20-5; Doc. 29-6. Those documents establish the following undisputed facts.[3]

---

[3]A party "must admit or deny the allegations asserted against it by the opposing party." Fed. R. Civ. P. 8(b)(1)(B). If a responsive pleading is required and the responding party does not deny an allegation, the allegation is admitted unless it concerns the damages amount, Fed. R. Civ. P. 8(b)(6), "'thus placing no further burden upon the Plaintiff to prove its case factually,'" *Ashley v. Jaipersaud*, 544 F. App'x 827, 829 (11th Cir. 2013) (quoting *Burlington N. R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996)). For liability and damages, Developers Surety presents evidence instead of relying on the failure to deny the allegations. *See generally* Doc. 20.

At Walker Roofing's request, Developers Surety issued a payment bond and a performance bond for a roofing project at the Valdosta State Prison for the Georgia Department of Corrections.[4] Doc. 20-2; Doc. 20-3 ¶¶ 5, 7; Doc. 20-4 ¶ 5; Doc. 20-5 ¶ 5; Doc. 29-3; Doc. 29-4 ¶¶ 5, 7; Doc. 29-5 ¶ 5; Doc. 29-6 ¶ 5. The bonds secured the payment by and performance of Walker Roofing. Doc. 20-2; Doc. 29-3; Doc. 20-3 ¶ 7; Doc. 29-4 ¶ 7. Only Developers Surety executed them. *See* Doc. 29-2 at 2, 4; Doc. 29-3 at 2, 4. They contain no choice-of-law provision, and the record does not indicate their place of execution. *See generally* Doc. 20-2; Doc. 29-3.

To induce Developers Surety to issue the bonds, the defendants executed an indemnity agreement. Doc. 20-1; Doc. 29-2; Doc. 20-3 ¶ 6; Doc. 20-5 ¶ 8; Doc. 29-4 ¶ 6; Doc. 29-6 ¶ 8. Only the defendants executed it. Doc. 20-1 at 8; Doc. 20-2 at 8. They executed it in Florida. Doc. 20-1 at 9; Doc. 29-2 at 9. It contains no choice-of-law provision. *See generally* Doc. 20-1; Doc. 29-2. Developers Surety issued the bonds after its execution. Doc. 20-3 ¶ 7; Doc. 20-5 ¶ 8; Doc. 29-4 ¶ 7; Doc. 29-6 ¶ 8.

In the indemnity agreement, the defendants agreed, jointly and severally, to:

> [I]ndemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature … which Surety may sustain or incur by reason of or in consequence of execution and delivery by Surety of any Bond on behalf of Principal [Walker Roofing] … including, without limitation, the following:
>
> ….

---

[4] A payment bond obligates a surety to make payment (generally to a principal's subcontractors), while a performance bond requires the surety to fulfill the underlying demands of the contract, such as completion of construction. *Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 320 F.3d 1260, 1269−72 (11th Cir. 2003).

Liability incurred or expenses paid in connection with claims, suits or judgments relating to an Obligation ["Any agreement executed, undertaking made, statutory or other duty assumed or liability incurred by Principal, the performance or discharge of which is guaranteed by Surety pursuant to a Bond[,]" Doc. 20-1 at 1; Doc. 29-2 at 1] or a Bond ["Any contract of suretyship, and any authorized extensions … undertaken by Surety for Principal, whether before or after the date of this Agreement[,]" Doc. 20-1 at 1; Doc. 29-2 at 1], including, without limitation, attorneys' fees and all legal expenses, and all fees and costs for investigation, accounting, or engineering services related to the adjustment of claims and losses.

….

Liability incurred or expenses paid in recovering or attempting to recover losses or expenses paid or incurred in connection with this Agreement, an Obligation or a Bond.

Doc. 20-1 ¶¶ 1, 1.3, 1.5, 14.1; Doc. 29-2 ¶¶ 1, 1.3, 1.5, 14.1. They also agreed:

Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed.

[] Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to, expenses for investigative, accounting, engineering and legal services.

….

Surety shall have the right to reimbursement of its expenses and attorneys' fees incurred hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further expenses and reasonable attorneys' fees incurred in such suit.

Doc. 20-1 ¶¶ 2.1, 2.2, 2.5; Doc. 29-2 ¶¶ 2.1, 2.2, 2.5.

After issuance of the bonds and the start of the project, Developers Surety received claims against the payment bond totaling $498,747.97 ($448,125.33 from Sika Sarnafil, Inc.; $28,127.49 from United Rentals; $16,085.15 from Bradco Supply;

$5,750 from Mac Johnson Roofing; and $660 from Outhouse Supplies).[5] Doc. 20-3 ¶ 8; Doc. 29-4 ¶ 8. Upon Walker Roofing's request, Developers Surety paid Walker Roofing $82,041.33 to cover expenses. Doc. 20-3 ¶ 10; Doc. 29-4 ¶ 10. And the Georgia Department of Corrections made a claim against the performance bond based on Walker Roofing's asserted inability to complete the project in accordance with requirements under the construction agreement. Doc. 20-3 ¶ 11; Doc. 29-4 ¶ 11.

Developers Surety hired the law firm of Thompson & Slagle to investigate and evaluate the claims and advise whether there were any defenses to them. Doc. 20-5 ¶¶ 5, 6; Doc. 29-6 ¶¶ 5, 6. The firm worked with Qualex Consulting Services, Inc. ("Qualex Consulting"), a construction consultant. Doc. 20-3 ¶ 12; Doc. 20-5 ¶ 6; Doc. 29-4 ¶ 12; Doc. 29-6 ¶ 6. The firm had represented Developers Surety for more than a decade on bond-related matters. Doc. 20-5 ¶ 4; Doc. 29-6 ¶ 4.

As a result of the investigation and evaluation, the firm advised Developers Surety the claim by the Georgia Department of Corrections appeared invalid due to its own breach of the construction contract, which had caused Walker Roofing's inability to complete the project. Doc. 20-5 ¶ 7; Doc. 29-6 ¶ 7. Based on that advice, Developers Surety, under subrogation rights in the indemnity agreement, sued the Georgia Department of Corrections for breach of the construction contract. Doc. 20-3 ¶ 13; Doc. 20-5 ¶ 7; Doc. 29-4 ¶ 13; Doc. 29-6 ¶ 7.

---

[5]In her affidavit, Ms. Moore states the amounts to bond claimants ($448,125.33, $28,127.49, $16,085.15, $5,750, and $660) total $498,748.97, Doc. 20-3 ¶ 8; Doc. 29-4 ¶ 8, but that figure is off by $1. Those amounts total $498,747.97.

A Georgia trial court entered judgment for $577,118.60 in favor of Developers Surety and against the Georgia Department of Corrections. Doc. 20-3 ¶ 14; Doc. 29-4 ¶ 14. The Georgia Department of Corrections appealed without success first to the Georgia Court of Appeals and then to the Georgia Supreme Court. Doc. 20-3 ¶ 15; Doc. 29-4 ¶ 15; *see State Dep't. of Corr. v. Developers Sur. & Indem. Co.*, 763 S.E.2d 868 (Ga. 2014) (addressing two issues, including one of first impression); *State Dep't of Corr. v. Developers Sur. & Indem. Co.*, 750 S.E.2d 697 (Ga. Ct. App. 2013) (addressing four issues, including one of first impression). "At all times the cost of the … litigation was borne solely by Developers [Surety]." Doc. 20-3 ¶ 16; Doc. 29-4 ¶ 16. Through the litigation, Developers Surety recovered against the Georgia Department of Corrections $577,118.60 plus a post-judgment amount of $74,905.55, for a total of $652,024.15. Doc. 20-3 ¶ 17; Doc. 20-5 ¶ 10; Doc. 29-4 ¶ 17; Doc. 29-6 ¶ 10.

As a result of the investigation, evaluation, and litigation, Developers Surety "incurred" expenses, including $89,476.96 for Qualex Consulting and $291,246.80 in attorney's fees and costs for the firm. Doc. 20-3 ¶ 18; Doc. 20-4 ¶ 7; Doc. 29-4 ¶ 18; Doc. 29-5 ¶ 7. The firm's services included helping to investigate the bond claims, evaluating any defenses against the bond claims, and litigating the state action, the state appeals, and this action. Doc. 20-5 ¶ 13; Doc. 29-6 ¶ 13.

Although Developers Surety recovered $652,024.15 through the state litigation, a $309,488.91 amount remained from the payments made or expenses incurred (bond claimants, $498,747.97; Walker Roofing, $82,041.33; Qualex

Consulting, $89,476.96; and the firm, $291,246.80).[6] Doc. 20-4 ¶ 9; Doc. 29-5 ¶ 9. Developers Surety demanded the Walkers and Walker Roofing pay the balance under the indemnity agreement. Doc. 20-5 ¶ 11; Doc. 29-6 ¶ 11. They failed to; thus this action. Doc. 20-5 ¶ 12; Doc. 29-6 ¶ 12.

In her affidavit, Ms. Moore states that, before making any payments on bond claims (i.e., the claims of Sika Sarnafil, Inc., United Rentals, Bradco Supply, Mac Johnson Roofing, and Outhouse Supplies), Developers Surety investigated them in good faith, requiring the claimants to show they had delivered the goods and services for which they were seeking payment and the amounts were reasonable. Doc. 20-3 ¶ 9; Doc. 29-4 ¶ 9. She also summarily states the expenses incurred for Qualex Consulting and Thomas & Slagle were "reasonable." Doc. 20-3 ¶ 18; Doc. 29-4 ¶ 18. Neither she nor the other affiants provide a ledger for Qualex Consulting. *See generally* Docs. 20-1−20-5; Docs. 29-2−29-6.

In his affidavit, Mr. Barker states Developers Surety "has spent $291,246.80 on attorneys' fees during the entire scope of this claim and recovery." Doc. 20-4 ¶ 7; Doc. 29-5 ¶ 7. In his affidavit, Mr. Wolenski states the total expenses are "no less than $14,144.86" and the "grand total of attorney's fees and expenses paid and to be paid by Developers [Surety] is … $291,246.80." Doc. 20-5 ¶ 15; Doc. 29-6 ¶ 15. He states attorneys spent 1325.30 hours "for representation of the interests of

---

[6]The amounts claimed in Mr. Barker's affidavit ($498,748.97, $82,041.33, $89,476.96, and $291,246.80), equal $961,514.06, and $961,514.06 minus $652,024.15 (the recovery amount) totals $309,489.91, not the $309,488.91 Mr. Barker uses, but $309,488.91 is the correct figure to use considering the mathematical error in Ms. Moore's affidavit explained in footnote 5 of this report and recommendation.

Developers [Surety] in connection with the [bonds]." Doc. 20-5 ¶ 17; Doc. 29-6 ¶ 17. He attaches a "true and correct ledger listing the attorney fees and costs billed by this firm to Developers [Surety]." Doc. 20-5 ¶ 14; Doc. 29-6 ¶ 14.

The ledger indicates total hours of 1361.10 (1326.90 billable hours and 34.20 non-billable hours) and a total billable amount of $274,783. Doc. 20-5 at 82, 84; Doc. 29-6 at 82, 84. Of the total hours, 29.1 hours at $6,035.50 were billed for this action (3.5 hours by Mr. Thompson at $225 an hour, and 25.6 hours by Mr. Wolenski at $205 an hour). Doc. 20-5 at 25—26, 73—76; Doc. 29-6 at 25—26, 73—76.

The ledger indicates total billable expenses of $14,144.86. Doc. 20-5 ¶¶ 14, 15 & pp. 83−84; Doc. 29-6 ¶¶ 14, 15, pp. 83−84. They are for Westlaw research, long-distance phone calls ($.15 a minute), copies ($.20 a page), postage, express delivery services, travel, court fees, service fees, and court-reporter services. Doc. 20-5 ¶¶ 14, 15 & pp. 83−84; Doc. 29-6 ¶¶ 14, 15 & pp. 83−84. Of the expenses, $675 relates to this action (a $400 filing fee and an apparent $275 fee for effectuating service of process). Doc. 20-5 at 83; Doc. 29-6 at 83.

Mr. Wolenski states the firm charges up to $225 an hour for partners and up to $205 an hour for associates. Doc. 20-5 ¶ 18; Doc. 29-6 ¶ 18. For most but not all attorneys who worked for Developers Surety during the investigation stage through this action, he provides their names, positions, years of experience, and hours worked, and for all of them, the ledger indicates the rates they charged and when they charged them:

| Attorney | Position | Years' Experience | Hours | Rate per Hour Dates Charged |
|---|---|---|---|---|
| DeWitte Thompson | Partner | 38 | 205.3 | $205 12/2009−01/2012<br>$225 02/2012−08/2015<br>$120 06/12/2012 |
| Jeff Slagle | Partner | 30 | 139.1 | $205 12/2009−10/2011<br>$225 05/2012−10/2014 |
| John Alexander | Associate | 10 or 12[7] | 25.4 | $185 06/2010−04/2012<br>$225 05/2012<br>$205 07/2012 |
| Alfred Malena | Former Partner | 15 | 177.8 | $205 10/2010−01/2012<br>$225 01/2012−03/2012 |
| Heather Smith | Unknown | Unknown | 104.5 | $185 03/2011−01/2012 |
| Joseph Wolenski | Associate | 8 | 552.3 | $185 04/2012<br>$225 05/2012<br>$205 06/2012−08/2015 |
| Paul Beal | Unknown | Unknown | 120.9 | $185 02/2010−08/2010 |

Doc. 20-5 ¶¶ 17, 19 & pp. 7−82; Doc. 29-6 ¶¶ 17, 19 & pp. 7−82.[8]

Of the hundreds of ledger entries over a four-year period from the investigation stage to this action, none is less than .2 hours (12 minutes), Doc. 20-5 at 7−82; Doc. 29-6 at 7−82, including for tasks like reviewing a minute entry by this Court and

---

[7]Mr. Wolenski states Mr. Alexander has "over ten (12) years" of experience. Doc. 20-5 ¶ 19; Doc. 29-6 ¶ 19. It is unclear what he means. The 2-year difference is not long enough to make a material difference.

[8]Some numbers in the ledger are slightly higher than some numbers in Mr. Wolenski's affidavit. The ledger indicates Mr. Thompson worked 206.6 billable hours (the affidavit indicates 205.3), Mr. Alexander worked 25.6 billable hours (the affidavit indicates 25.4), Mr. Malena worked 189.3 billable hours (the affidavit indicates 177.8), Ms. Smith worked 108.5 billable hours (the affidavit indicates 104.5), and Mr. Wolenski worked 567 billable hours (the affidavit indicates 552.3). The ledger also indicates Kelley Herrin and Robert Steinberg billed hours (the former, 1.6 hours at $205 an hour for work in February 2013; the latter, 2.5 hours at $185 an hour in January 2012). Mr. Wolenski does not explain why the numbers differ and does not mention Ms. Herrin or Mr. Steinberg. *See generally* Doc. 20-5; Doc. 29-6.

reviewing the "court docket" in this case, Doc. 20-5 at 25–26, 75; Doc. 29-6 at 25–26, 75, indicating a .2-hour minimum incremental billing practice.

Mr. Wolenski opines up to $225 an hour for a partner and up to $205 an hour for an associate are "standard, reasonable rates and are in the range of, if not lower than, other attorneys in South Georgia and North Florida doing similar work of a comparable nature, i.e., representing contract bonding companies (sureties) in construction disputes and recovery efforts." Doc. 20-5 ¶ 18; Doc. 29-6 ¶ 18. He does not indicate a timeframe of when those rates would be reasonable but signed the affidavit in September 2015. Doc. 20-5 at 6; Doc. 29-6 at 6. The ledger indicates he and Mr. Alexander, both associates, charged $225 an hour during May 2012 but charged $185 an hour before that month and $205 an hour after that month. Doc. 20-5 at 30–31; Doc. 29-5 at 30–31 (Mr. Alexander; 12 hours, $2,700), 49–50 (Mr. Wolenski; 76.6 hours, $17,235).

Mr. Wolenski opines, "Based on the education and experience of the … attorneys who were engaged in representing Developers [Surety] in relation to the [bonds], the reasonable value of such professional services is no less than $291,246.80 including the value of services provided specifically in connection with this Indemnity Lawsuit." Doc. 20-5 ¶ 14; Doc. 29-6 ¶ 14. He adds, "The amount and nature of the attorney fees incurred by Developers [Surety] arising out of the [bonds] is reasonable for the quality and type of work performed … on behalf of Developers [Surety]. This time … has been both necessary and reasonable regarding (i) investigating the bond claims asserted against the [bonds], (ii) investigating any surety defenses to the bond claims, and (iii) prosecuting [this action]." Doc. 20-5 ¶ 16; Doc. 29-6 ¶ 16.

12

## IV. Law & Analysis

### A. *Summary Judgment*

To decide a motion for summary judgment, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Federal Rule of Civil Procedure 56(a) directs a court to enter summary judgment or partial summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The movant has the initial burden of showing there is no genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant satisfies that burden, the non-movant "must then go beyond the pleadings, and by its own [evidence], designate specific facts showing that there is a genuine issue for trial." *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (internal quotation marks omitted).

"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). A "partial summary judgment" is not a judgment; it is "merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Fed. R. Civ. P. 56 advisory committee's note (1946).

In seeking summary judgment, Developers Surety contends the Walkers breached the indemnity agreement by failing to pay all losses and expenses it incurred in connection with its issuance of the bonds. *See generally* Doc. 20. It assumes Florida law governs presumably because the defendants executed the indemnity agreement in Florida. *See generally* Doc. 20. It observes Florida recognizes and enforces indemnity agreements between a surety and a principal. Doc. 20 at 10−15. Citing *Travelers Casualty & Surety Company of America v. Grave & Naeem Uddin, Inc.*, No. 08-61868-CIV, 2009 WL 3878297 (S.D. Fla. Nov. 18, 2009) (unpublished) (order denying partial summary judgment in favor of surety); 2009 WL 4110110, at *4 (S.D. Fla. Nov. 24, 2009) (unpublished) (order on surety's motion for reconsideration); 2009 WL 6066973 (S.D. Fla. Dec. 1, 2009) (unpublished) (order on surety's motion for clarification), it argues it satisfies an initial burden of showing reasonableness of the attorney's fees but the Walkers have not satisfied the resulting burden of showing unreasonableness. Doc. 20 at 17. It contends it has "suffered financial damage in the amount of $309,488.91" and requests judgment in that amount. Doc. 20 at 18.

In a diversity action, a federal district court must apply the substantive law of the forum state, *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), including its conflicts of law principles, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Under Florida conflicts of law principles, the law of the place where a contract is executed or to be performed (*lex loci contractus*) determines its nature, validity, and interpretation, *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008); *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163

(Fla. 2006), while damages are governed by Florida law, *Zim v. W. Pub. Co.,* 573 F.2d 1318, 1327 n.15 (5th Cir. 1978) (citing *Goodman v. Olsen,* 305 So. 2d 753 (Fla. 1974), and *Wingold v. Horowitz,* 292 So. 2d 585 (Fla. 1974)); *Jemco, Inc. v. UPS, Inc.,* 400 So. 2d 499, 502 n.12 (Fla. Dist. Ct. App. 1981). Because the defendants executed the indemnity agreement in Florida, Doc. 20-1 at 9, and absent any asserted reason to the contrary, Florida law governs the nature, validity, and interpretation of the indemnity agreement as well as damages for any breach.[9]

A suretyship is a "tripartite relationship in which one party (the surety) guarantees another party (the obligee) that a third party (the principal) will perform a contract in accordance with its terms and conditions. The surety promises the obligee to answer the debt, default, or miscarriage of the principal." *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.,* 945 So. 2d 1216, 1226 (Fla. 2006) (quoted authority omitted). "Suretyship is a form of guaranty. In exchange for a premium, the surety lends its financial strength and credit to the principal on the condition that, if the surety has to satisfy the principal's debt or default, the principal will indemnify the surety for its losses and expenses. In essence, the surety becomes the guarantor

---

[9]To the extent an argument could be made that Georgia substantive law applies for the purpose of deciding liability (Developers Surety executed the bonds in Georgia after the defendants had executed the indemnity agreement in Florida, and the bonds secured construction in Georgia, *see* Doc. 20-1 at 9; Doc. 29-2 at 9; Doc. 29-2 at 2, 4; Doc. 29-3 at 2, 4), it would not matter to the outcome of the case because Georgia substantive law concerning indemnity agreements is not materially different from Florida substantive law concerning indemnity agreements. *Compare Anderson v. U.S. Fid. & Guar. Co.,* 600 S.E.2d 712, 715 (Ga. Ct. App. 2004) (courts construe an indemnity agreement according to ordinary rules of contract construction), *with Improved Benevolent & Protected Order of Elks of the World, Inc. v. Delano,* 308 So. 2d 615, 617 (Fla. Dist. Ct. App. 1975) (same).

of the principal's ability to perform its obligations to the obligee." *Id.* (quoted authority omitted). "The surety, unlike the liability insurer … is entitled to be indemnified by the one who should have performed the obligation." *W. World Ins. Co. v. Travelers Indem. Co.*, 358 So. 2d 602, 604 (Fla. Dist. Ct. App. 1978). "Courts nationally, as well as in Florida, have recognized the vital role of sureties in the construction industry." *Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1303 (S.D. Fla. 2008).

"[A]s a precondition to issuance of its bonds, sureties often require that the principal execute a written indemnity agreement which memorialize[s], enhance[s] and supplement[s] its common law rights." *Id.* "Sureties draft their indemnity agreements broadly, and with extensive protections, and the courts, understanding the importance of the indemnity agreement, consistently enforce the agreements and the remedies granted to the sureties." *Id.* at 1303−04. An indemnity agreement "usually permits a surety to recover for attorney's fees it incurs both in handling claims under the bond and in enforcing the terms of the indemnity agreement from the indemnitors." Edward Etcheverry, FLA. CONSTR. LAW & PRACTICE, *Rights & Liabilities of Sureties,* § 8.120 (2013). The indemnity agreement, not the bond, delineates the rights and obligations of the principal and surety. *Aetna Ins. Co. v. Buchanan*, 369 So. 2d 351, 354 (Fla. Dist. Ct. App. 1979).

Courts construe an indemnity agreement according to ordinary rules of contract construction. *Improved Benevolent & Protected Order of Elks of the World, Inc. v. Delano*, 308 So. 2d 615, 617 (Fla. Dist. Ct. App. 1975). Thus, "the terms of the agreement will determine whether the indemnitor is obligated to reimburse the

16

indemnitee for a particular claim." *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So. 2d 1072, 1077 (Fla. Dist. Ct. App. 2003).

To recover under an indemnity agreement, a surety must prove (1) breach of an indemnity agreement, (2) resulting losses, (3) facts for which there is coverage, and (4) the reasonableness of the amount. *Fid. & Guar. Ins. Co. v. Ford Motor Co.*, 707 F. Supp. 2d 1300, 1313 (M.D. Fla. 2010) (citing *Port Everglades Auth. v. R.S.C. Indus., Inc.*, 351 So. 2d 1148, 1150 (Fla. Dist. Ct. App. 1976)); *Allegheny Cas. Co. v. United Constr. Co. of Cent. Fla., Inc.*, No. 6:12-cv-01363-Orl-36KRS, 2014 WL 440083, at *9 (M.D. Fla. Feb. 3, 2014) (unpublished); *Brinker v. Chicago Title Ins. Co.*, No. 8:10-cv-1199-T-27AEP, 2012 WL 1081211, at *9 (M.D. Fla. Feb. 9, 2012) (unpublished).

The Court must accept as true the following facts based on the affidavits filed by Developers Surety to which the defendants did not respond. The defendants executed the indemnity agreement to induce Developers Surety to issue bonds for the roofing project. Doc. 20-1; Doc. 20-3 ¶ 6; Doc. 20-5 ¶ 8. Developers Surety thereafter issued the bonds and, as a result, incurred a loss of $309,488.91 (bond claimants, $498,747.97; Walker Roofing, $82,041.33; Qualex Consulting, $89,476.96; and the law firm, $291,246.80; minus recovery through the state litigation, $652,024.15). Doc. 20-4 ¶ 9. The defendants agreed to, jointly and severally, "indemnify and hold harmless [Developers] Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature … which [Developers] Surety may sustain or incur by reason of or in consequence of execution and delivery by [Developers] Surety of any Bond on behalf of Principal

[Walker Roofing]. Doc. 20-1 ¶ 1. The defendants agreed, "Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed," and "Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to, expenses for investigative, accounting, engineering and legal services." Doc. 20-1 ¶¶ 2.1, 2.2. Developers Surety demanded the defendants indemnify it under the indemnity agreement, but they did not. Doc. 20-5 ¶¶ 11, 12. Based on those undisputed facts, Developers Surety has established the first three elements: breach of the indemnity agreement, resulting losses, and facts for which there is coverage.

The fourth element—the reasonableness of the amount—remains. "[C]ourts interpolate a reasonableness requirement into indemnity agreements to guard against moral hazard—the tendency to take additional risks (or run up extra costs) if someone else pays the tab." *Medcom Holding Co. v. Baxter Travenol Labs.*, 200 F.3d 518, 521 (7th Cir. 1999); *accord Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1068 (10th Cir. 1998); *Ideal Elec. Sec. Co., Inc. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148–49 (D.C. Cir. 1997); *Jackson v. Hollowell*, 685 F.2d 961, 966 (5th Cir. 1982); *R.W. King Constr. Co. v. City of Melbourne*, 384 So. 2d 654, 655 (Fla. Dist. Ct. App. 1980).[10]

---

[10]The indemnity agreement here expressly recognizes the reasonableness requirement, at least with respect to attorney's fees for this action. *See* Doc. 20-1 ¶ 2.5 ("Surety shall have the right to reimbursement of its expenses and attorneys' fees incurred hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further expenses and **reasonable** attorneys' fees incurred in such suit.") (emphasis added).

Regarding attorney's fees claimed as damages under an indemnity agreement—whether incurred for an action on the bond or incurred for an action on the indemnity agreement—reasonableness is a question of fact, *Sork v. United Benefit Fire Ins. Co.*, 161 So. 2d 54, 56 (Fla. Dist. Ct. App. 1964), for which a lodestar analysis is unnecessary, *Stabinski, Funt & De Oliveira, P.A. v. Law Offices of Alvarez*, 490 So. 2d 159, 161 (Fla. Dist. Ct. App. 1986).[11] Instead, the inquiry is whether the fees, in the aggregate, are commercially reasonable; "that is, were they fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves." *Medcom*, 200 F.3d at 521; *accord Fashion House, Inc. v. Kmart Corp.*, 892 F.2d 1076, 1094 n.10 (1st Cir. 1989) (state law required "far less" than lodestar requirement court had demanded for proving reasonableness of defense costs (mostly attorney's fees) under indemnity agreement broadly worded to cover all expenses, including attorney's fees, and indemnitee had been prepared to prove it had paid amount in arms-length dealing); *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 319 (2d Cir. 1985) ("Although [the judge] relied on … the lodestar method, he was not required to do so in fixing fees under a contract of indemnity. … We see no sufficient reason to mandate application of the lodestar method … where the fee is not 'court awarded' in the sense of imposing an obligation, but is rather a filling in of the terms of a contract. In such a case, the court's task … is to make its best guess as to what

---

[11]Under the lodestar method generally used by federal and Florida courts to determine the reasonableness of attorney's fees (usually awardable under a statute), a court multiplies the number of hours reasonably expended by a reasonable hourly rate. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148−49 (11th Cir. 1993); *First Baptist Church of Cape Coral, Fla., Inc. v. Compass Constr., Inc.*, 115 So. 3d 978, 980 & n.5 (Fla. 2013).

the paying party actually would have had to pay.") (cited with approval by Florida court in *Stabinski*, 490 So. 2d at 161)).[12]

Regarding an award of costs, a federal court is bound by the limitations in 28 U.S.C. § 1920 unless there is explicit statutory or contractual authorization for their taxation.[13] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Thus, if an indemnity agreement explicitly provides for recovery of costs or expenses, a court is not bound by those limitations. *Allison v. Bank One-Denver*, 289 F.3d 1223, 1246−47 (10th Cir. 2002); *Am. Safety Cas. Ins. Co. v. Robert Charles Enters., Inc.*, No. 8:06-cv-237-T-17TEM, 2008 WL 2477655, at *3 (M.D. Fla. June 17, 2008) (unpublished); *United Food Mart, Inc. v. Motiva Enters. LLC*, No. 04-60539CIV, 2006 WL 3068821, at *2 (S.D. Fla. July 10, 2006) (unpublished).

In *Travelers*—the case Developers Surety asks this Court to follow to decide whether summary judgment on the reasonableness of the attorney's fees is

---

[12]In a case applying admiralty law, the Eleventh Circuit stated in dictum the district court applied a lodestar analysis "as it was required to do" to decide reasonableness of attorney's fees under an indemnity agreement. *See Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001) (quoted). In a case applying Georgia law, the Eleventh Circuit held the plaintiff was entitled to summary judgment on attorney's fees and expenses under an indemnity agreement like the one here because the plaintiff presented prima facie evidence of loss through computer printouts and a verifying affidavit but the defendants presented no rebuttal evidence. *See Travelers Cas. & Sur. of Am. v. Winmark Homes, Inc.*, 518 F. App'x 899, 903 (11th Cir. 2013). Because Florida law applies here and is similar to Georgia law, the latter case is more analogous.

[13]Section 1920 limits costs to (1) "Fees of the clerk and marshal," (2) "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case," (3) "Fees and disbursements for printing and witnesses," (4) "Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," (5) "Docket fees," and (6) "Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services."

warranted, Doc. 20 at 16−17—a contractor entered into contracts with a state agency for construction projects. 2009 WL 3878297, at *1. A surety entered into an indemnity agreement (similar to the one here; *compare id. with* Doc. 20-1) with the contractor and issued bonds for the projects. *Id.* Construction disputes arose, the agency declared the contractor in default, and the agency demanded performance under the bonds. *Id.* The surety entered into a takeover agreement with the agency and became obligated to complete and correct items required by the contracts. *Id.* In actions by the agency against the contractor and surety, the contractor's attorney served as lead counsel, and the surety's attorney served as additional counsel. *Id.* at *2. One action was settled through the contractor's payment to the agency. *Id.* The surety ultimately demanded indemnification by the contractor, including for experts, attorneys, and consultants. *Id.* The contractor did not pay, and the surety sued. *Id.*

The surety argued it was entitled to partial summary judgment on amounts paid based on undisputed evidence it had paid the amounts in good faith. *Id.* at *5. The court rejected the argument, observing the amounts were based mostly on attorney's fees and expenses incurred during litigation with the agency. *Id.* at *7. The court held, under the agreement and Florida law, a surety could recover only reasonable fees and expenses (as opposed to fees and expenses merely paid in good faith regardless of reasonableness), and, under Florida law, a jury had to decide reasonableness. *Id.* at *6−7. Because the contractor had raised factual disputes about the reasonableness of the amounts paid (including fees to Qualex Consulting Group), summary judgment was unwarranted. *Id.* at *7. In denying a motion for reconsideration, the court emphasized if reasonableness did not matter, "the

indemnitee would have no incentive to police its attorneys' activities and charges, since it could simply dump any and all charges billed onto the indemnitor. Such a result would make no sense." 2009 WL 4110110, at *4 (quoted authority omitted).

The surety moved for clarification on the burden of proof. 2009 WL 6066973, at *1. The court granted the motion and clarified that evidence the surety "paid the costs and expenses is *prima facie* evidence that the costs and expenses are reasonable. The burden then shifts to the Defendants to demonstrate that the costs and expenses are unreasonable." *Id.* at *2. The court added it did not intend to "create a framework that is insurmountable for a surety at summary judgment. An indemnitor may not escape a summary disposition of a case by simply alleging that the fees and expenses incurred are unreasonable." *Id.*

I recommend applying the framework (as Developers Surety requests, Doc. 20 at 18) because it appears consistent with Florida law, though its application does not warrant full summary judgment in favor of Developers Surety.

Applying the framework, Developers Surety has established the reasonableness of the amount to the bond claimants ($498,747.97). Although no affiant clearly indicates Developers Surety paid the entire amount, and payment of the entire amount cannot be inferred from the amount recovered through the state litigation,[14] Developers Surety has otherwise established the reasonableness of the

---

[14]Developers Surety recovered $577,118.60 from the state litigation (excluding post-judgment interest of $74,905.55). Doc. 20-3 ¶ 17; Doc. 20-5 ¶ 10. That amount minus the payment to Walkers Roofing ($82,041.33) equals $495,077.27. The amount claimed here with respect to bond claimants is $498,747.97. Doc. 20-3 ¶ 8. The record does not make clear why there is a slight difference.

amount through Ms. Moore's affidavit in which she states, "Before making any payments on claims made against the Bonds, Developers [Surety] investigated each payment bond claim in good-faith, requiring the claimants to show that the goods or services for which payment was sought was delivered to or performed upon the Project and that the payment sought was reasonable." Doc. 20-3 ¶ 9. The defendants have not attempted to show otherwise.

Developers Surety has established it paid Walker Roofing $82,041.33 through Ms. Moore's affidavit in which she states it paid Walker Roofing that amount. Doc. 20-3 ¶ 10. The defendants have not attempted to show otherwise. As an amount directly to the principal, reasonableness need not be established.

Developers Surety has not established the reasonableness of the remaining amounts claimed (Qualex Consulting, $89,476.96; the firm, $291,246.80).[15] Ms. Moore states Developers Surety "incurred" the amounts to Qualex Consulting and the firm. Doc. 20-3 ¶ 18. Mr. Barker states Developers Surety "spent" the amounts on services

---

[15]In the indemnity agreement, the defendants agreed:

In any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred and expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitor [the Walkers and Walker Roofing].

Doc. 20-1 ¶ 2.4; Doc. 29-2 ¶ 2.4. Developers Surety does not cite this provision in its motions for summary and default judgment or otherwise seek to rely on it. *See generally* Doc. 20; Doc. 29. It is unclear if Ms. Moore is an officer of Developers Surety, and she provides an itemized list within her affidavit of only claims on the payment bond. Doc. 20-3 ¶ 8; Doc. 29-4 ¶ 8. Neither Mr. Barker nor Mr. Wolenski is an officer of Developers Surety. Doc. 20-4 ¶ 3; Doc. 20-5 ¶ 3; Doc. 29-5 ¶ 3; Doc. 29-6 ¶ 3. Developers Surety did not provide any vouchers or other evidence of disbursement. *See generally* Docs. 20-1–20-5; Docs. 29-2–29-6.

of Qualex Consulting and the firm. Doc. 20-4 ¶ 7. Mr. Wolenski states Developers Surety "incurred" the amounts to the firm and the amounts have been paid and **are to be paid**. Doc. 20-5 ¶ 15. Given Mr. Wolenski's statement indicating the entire amount has not been paid, the Court presumes Mr. Barker meant "incurred" rather than "spent." Without establishment of actual payment of the amounts claimed and with mere summary assertions that the amounts are reasonable, Developers Surety has not established its burden of showing reasonableness. *See Travelers*, 2009 WL 6066973, at *1; *see also In re Cisneros*, No. 12-10468, 2012 WL 4627833, at *2 & n.4 (Bankr. N.D. Cal. Oct. 1, 2012) (unpublished) (citing *Travelers* and emphasizing a "claimant makes out a *prima facie* case that an expense is reasonable only when the expense was actually paid"; without payment, there is no presumption of reasonableness).

Regarding attorney's fees, the ledger raises issues concerning reasonableness that would prevent any acceptance of the summary assertions of reasonableness by Ms. Moore and Mr. Wolenski. He opines up to $225 an hour for a partner and up to $205 an hour for an associate are "standard, reasonable rates and are in the range of, if not lower than, other attorneys in South Georgia and North Florida doing similar work of a comparable nature." Doc. 20-5 ¶ 18. But the ledger indicates he and Mr. Alexander, both associates, charged $225 an hour during May 2012 and charged $185 an hour before that month and $205 an hour after that month even though the work performed during May 2012 appears no different in kind from the work performed before and after that month (for example, researching, making telephone calls, and preparing affidavits). Doc. 20-5 at 30−31 (Mr. Alexander; 12 hours, $2700), 49−50

(Mr. Wolenski, 76.6 hours, $17,235). He does not explain why the rate varied. *See generally* Doc. 20-5 at 30−31. Absent a good reason not provided or apparent here, paying high-end partner rates for an associate would be commercially unreasonable.

On the apparent .2-hour (12-minute) minimum billing increment, the State Bar of Georgia answered, "Is it ethically permissible for an attorney, with or without notice to a client, to charge for a standard time unit without regard to how much time is actually expended," with, "A lawyer may charge for standard time units so long as this does not result in a fee that is unreasonable, and so long as the lawyer communicates to the client the method of billing the lawyer is using so that the client can understand the basis for the fee." State Bar of Georgia, Formal Advisory Opinion No. 01-1 (May 3, 2001). It added "rounding up" is permissible but "repeatedly rounding up from one minute to fifteen minutes is questionable at best and would raise substantial issues as to whether the fee was reasonable." *Id.* It advised, "[a] lawyer could avoid a challenge to rounded up fees as excessive by using a smaller minimum unit (a six minute unit is preferable), and only rounding up if more than half that time was actually expended." *Id.* Here, although the apparent .2-hour (12-minute) minimum billing increment used for over four years is not necessarily unreasonable, Developers Surety has not shown it paid the entire amount resulting from that billing practice to satisfy even the minimal burden it asserts it possesses.

The ledger also prevents any finding the aggregate amount claimed is commercially reasonable. Mr. Wolenski states total expenses are "no less than $14,144.86" and the "grand total of attorney's fees and expenses paid and to be paid by [Developers Surety] is … $291,246.80." Doc. 20-5 ¶ 15. That total minus $14,144.86

(total expenses) equals $277,101.94 (total attorney's fees claimed). But the ledger indicates total billable attorney's fees of $274,783. Doc. 20-5 at 82. Absent a good reason not provided or apparent here, paying more for attorney's fees ($277,101.94) than total billable attorney's fees ($274,783) would be commercially unreasonable.

Thus, I recommend granting the motion for summary judgment in part by treating the following facts as undisputed for the remainder of the action: the Walkers breached the indemnity agreement, Developers Surety incurred resulting losses of $309,488.91, there are facts for which there is coverage, the amount to bond claimants ($498,747.97) is reasonable, and Developers Surety paid Walkers Roofing $82,041.33. See Fed. R. Civ. P. 56(g). I recommend otherwise denying the motion for summary judgment, leaving for another day the remaining issue of the reasonableness of the amounts for Qualex Consulting ($89,476.96) and the firm ($291,246.80).

## B.   *Default Judgment*

Federal Rule of Civil Procedure 55(a) provides if "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Federal Rule of Civil Procedure 55(b)(2) provides a party must apply for default judgment, and, "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or representative must be served with written notice of the application." "An evidentiary hearing is not a per se requirement" for an entry of default judgment and is unnecessary when "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (citation omitted). A "district court has the authority to enter default judgment

26

for failure to prosecute with reasonable diligence or to comply with its orders or rules of procedure," but it is a harsh sanction that should only be used in "extreme situations." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

"The rule is well established that a corporation is an artificial entity that can act only through agents, cannot appear pro se, and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985); *accord* Local Rule 2.03(e) ("A corporation may appear and be heard only through counsel admitted to practice in the Court."). A corporation's failure to appear through counsel may result in sanctions, including the entry of default, because it constitutes failure to "otherwise defend," *see* Fed. R. Civ. P. 55(a), or comply with an order. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996); *McPartland v. ISA Inv. Servs., Inc.*, 890 F. Supp. 1029, 1032 (M.D. Fla. 1995); *Textron Fin. Corp. v. RV Having Fun Yet, Inc.*, No. 3:09-cv-2-J-34TEM, 2010 WL 1038503, at *5 (M.D. Fla. Mar. 19, 2010) (unpublished).

If "one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." CHARLES ALAN WRIGHT, ET AL., FED. PRACTICE & PROCEDURE § 2690 (3d ed. 2016) (citing *Frow v. De La Vega*, 82 U.S. 552 (1872)). Although some courts have declined to apply that procedure if liability is joint and several (as opposed to just several), *see, e.g., In re Uranium Antitrust Lit.*, 617 F.2d 1248, 1257 (7th Cir. 1980), the Eleventh Circuit has opined it is "sound policy" to not enter judgment against defendants even if they are

merely similarly situated, *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984).

Based on the recommendation the Court deny the motion for summary judgment to the extent it seeks final judgment against the Walkers, I recommend denying the motion for default judgment against Walker Roofing without prejudice to renewal upon any order directing entry of final judgment against the Walkers.

## V.    Recommendation[16]

I **recommend**:

(1)    **granting in part** the motion for summary judgment, Doc. 20, and treating the following facts as undisputed for the remainder of the action: the Walkers breached the indemnity agreement, Developers Surety incurred resulting losses of $309,488.91, there are facts for which there is coverage, the amount to bond claimants ($498,747.97) is reasonable, and Developers Surety paid Walker Roofing $82,041.33;

(2)    **denying in part** the motion for summary judgment to the extent it seeks any other relief, leaving for another day the remaining issue of the reasonableness of the amounts for Qualex Consulting ($89,476.96) and the firm ($291,246.80); and

---

[16]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

**(3)**    **denying** the motion for default judgment against Walker Roofing, Doc. 29, without prejudice to renewal upon any order directing entry of final judgment against the Walkers.

**Entered** in Jacksonville, Florida, on July 25, 2016.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    The Honorable Marcia Morales Howard

Counsel of Record

Lewis & Heather Walker
P.O. Box 554
Lake Butler, FL 32054