**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DEVELOPERS SURETY &
INDEMNITY CO.,

    Plaintiff,

vs.                                       Case No. 3:15-cv-655-J-34PDB

LEWIS WALKER ROOFING, a Florida
Corporation, LEWIS G. WALKER, and
HEATHER C. WALKER,

    Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action is before the Court for the entry of findings of fact and conclusions of law as to Plaintiff Developers Surety & Indemnity Company's (Developers) claim for indemnification against Defendants Lewis G. Walker and Heather C. Walker (collectively, the Walkers). On December 6, 2016, the Court held a bench trial to resolve the outstanding issues between these parties. See Clerk's Minutes (Doc. 43). Having reviewed the pleadings, examined the evidence, observed the witnesses, and considered the arguments of the parties, as well as the remainder of the record, in this order the Court makes its findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure (Rule(s)).

**I.    Procedural Background**

The operative pleading in this action is Developers' Amended Complaint filed on June 5, 2015. See Developers Surety & Indemnity Company's First Amended Complaint (Doc. 5; Complaint). In the Complaint, Developers asserts that it issued payment and

1

performance bonds to Lewis Walker Roofing, a Florida corporation ("LWR"), for a project to be completed by LWR for the Georgia Department of Corrections ("Georgia DOC"). Id. at 5. In connection with the issuance of the bonds, LWR and the Walkers executed an indemnity agreement (the "Indemnity Agreement") in favor of Developers in which they agreed to indemnify and hold harmless Developers from any losses including attorney's fees and costs sustained by reason of the bonds. See Order (Doc. 38; Summary Judgment Order) (adopting the Report and Recommendation (Doc. 33; Report) at 5-6). When LWR did not complete the construction project, Developers was called upon to pay suppliers, subcontractors and other claims under the bonds. See Summary Judgment Order (adopting the Report at 6-7). Relying on the Indemnity Agreement, Developers seeks to recoup these payments as well as its consulting fees and attorney's fees and costs from the Walkers. See Complaint at 5. Specifically, Developers asserts three causes of action against the Walkers and LWR: Count I – Specific Performance of Indemnity Agreement; Count II – Breach of the Indemnity Agreement; and Count III – Common Law Indemnity. See generally Complaint.

The Walkers filed an answer to the Complaint, in which they neither admit nor deny any specific allegation. See Response to Developers Surety & Indemnity Company's Complaint (Doc. 10; Answer). Instead, the Walkers explain their belief that they were neither at fault for the problems with the Georgia DOC construction project, nor are they indebted to Developers. See generally Answer. Although the Walkers attempted to answer the Complaint on behalf of, and to represent, LWR in this action, the Court determined that the corporation must be represented by counsel. See Order (Doc. 23). When LWR failed to make an appearance through counsel, the Court directed the Clerk to

enter a default as to LWR, see Order (Doc. 24), which the Clerk did on November 2, 2015, see Clerk's Default (Doc. 25). On February 3, 2016, Developers filed Plaintiff's Motion for Default Judgment and Memorandum of Law in Support (Doc. 29; Motion for Default Judgment) seeking a default judgment against LWR. Because the liability of the Walkers and LWR under the Indemnity Agreement was joint and several, in an order dated September 26, 2016, the Court deferred consideration of the Motion for Default Judgment pending its resolution of the claims against the Walkers. See Summary Judgment Order. The Court therefore does not address the Motion for Default Judgment here, and instead addresses only Developers' claim as to the Walkers. The Court will address the Motion for Default Judgment by separate order.

On September 14, 2015, Developers filed a motion for summary judgment seeking summary judgment as to its breach of the Indemnity Agreement claim set forth in Count II of the Complaint. See Plaintiff's Motion for Summary Judgment and Incorporated Statement of Material Facts and Memorandum of Law in Support (Doc. 20; Motion). The undersigned referred the Motion to the assigned Magistrate Judge for preparation of a report and recommendation. See Order (Doc. 31). After the Walkers failed to respond to the Motion, on July 25, 2016, the Magistrate Judge entered the Report recommending that the Motion be granted in part, in particular with respect to the Walkers' liability under the Indemnity Agreement, but denied in part with regard to some of the losses for which Developers sought indemnification. See generally Report.

Although Developers objected to portions of the Report, the Walkers filed no objections. See Plaintiff's Objections to Magistrate's Report and Recommendation (Doc. 34; Objections); generally Docket. Despite the Walkers failure to respond to the Report,

3

before making a final determination as to whether the Report was due to be adopted or rejected, the Court scheduled a hearing and invited the Walkers to participate telephonically. See Order (Doc. 36). The Walkers and counsel for Developers appeared at the hearing by phone, and the Court heard from all. See Clerk's Minutes (Doc. 37). At the conclusion of the hearing, the Court determined that the Report was due to be adopted in part. See id. Specifically, the Court determined that summary judgment was due to be granted in favor of Developers to the extent that 1) all facts relating to the question of liability were established in favor of Developers, and 2) the facts relating to certain losses were established in favor of Developers; but denied to the extent that genuine issues of material fact remained as to Developers entitlement to indemnification as to the sums incurred for the services of its consultant Qualex Consulting Service ("Qualex") as well as its attorney's fees and costs paid to Thompson & Slagle, LLC (the "Firm"). For the remainder of this action, the Court held that the following facts were to be treated as undisputed and established:

(1) the Walkers breached the indemnity agreement;
(2) Developers incurred resulting losses;
(3) there are facts for which there is coverage;
(4) the amounts paid by Developers to bond claimants ($498,747.97) and to LWR ($82,041.33) are reasonable; and
(5) Developers received $652,024.15 through the state court litigation in Georgia.[1]

See Summary Judgment Order at 2. As such, in the Summary Judgment Order, the Court determined that the only issues remaining for the Court's resolution were whether Developers was entitled to indemnification for 1) the sums claimed as having been paid to

---

[1] As will be discussed in greater detail in the Court's Findings of Facts and Conclusions of Law, the Georgia DOC and Developers, on behalf of LWR, engaged in protracted litigation in the Georgia state court to determine which party was at fault for LWR's inability to complete the Georgia DOC construction project. See infra at 8-9.

Qualex ($89,476.96) and 2) the sums expended for attorney's fees and costs ($291,246.80).

After giving the parties an opportunity to amicably resolve the matter, the Court scheduled a bench trial to address the remaining disputed issues. See Summary Judgment Order. The Court proceeded with that bench trial on December 6, 2016.[2] See Clerk's Minutes (Doc. 43); see Bench Trial Transcript (Doc. 47; Tr.). The Walkers, counsel for Developers, and its corporate representative, Cherie Rondinelli, appeared in person at the trial. Developers called three witnesses: Edward Mackowiak, founder and president of Qualex, Cherie Rondinelli, and Joseph Wolenski, counsel for Developers in both the instant and the underlying state court litigation against the Georgia DOC.

The Walkers presented no specific evidence at trial, but did present argument. In response to one such argument, a question arose as to whether Developers had attempted to recoup the attorney's fees and costs it sought to recover from the Walkers in this action from the Georgia DOC in the state court litigation. See Tr. at 110-11. Mr. Wolenski testified that the contract between LWR and the Georgia DOC entitled the prevailing party to an award of attorney's fees, and that as LWR's subrogee, Developers sought those fees, but the Georgia state court denied its request for reasons which Wolenski could not recall. See id. at 103-05. Because the reason for the denial could impact the Court's determination regarding whether those attorney's fees and costs were reasonably incurred by

---

[2] In both its Motion for Summary Judgment and at the bench trial, Developers pursued only its claim in Count II for breach of the Indemnity Agreement. As such, the Court determines that Developers abandoned the claim in Count I for specific performance as well as its claim in Count III for common law indemnification. See Nance v. Maxwell Fed. Credit Union (Max), 186 F.3d 1338, 1340 n.2 (11th Cir. 1999) (citing Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) ("affirming district court's holding that plaintiff abandoned a claim that was raised in the complaint but ignored in all subsequent filings")); see also Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000) (collecting cases). The Court will therefore dismiss these claims.

Developers, and thus encompassed by the Indemnity Agreement, see id. at 122,[3] the Court kept the evidence open and directed Developers to submit to the Court the final court orders from each stage of the Georgia state court litigation, see id. at 119. On December 8, 2016, Developers supplemented the record by filing its Notice to Take Judicial Notice (Doc. 46; Notice) of Construction Contract #DOC-07-006, id., Ex. 1 (Construction Contract), Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment, id., Ex. 2 (Georgia Trial Court Order), A13A0969. State of Georgia Department of Corrections v. Developers Surety and Indemnity, id., Ex. 3 (Georgia Court of Appeals Order), and S14G0260. State of Georgia Department of Corrections v. Developers Surety and Indemnity Company, id., Ex. 4 (Supreme Court of Georgia Order). With all evidence received, the matter is ripe for the Court's resolution.

## II. Applicable Law

Under Florida Law, to recover under an indemnification agreement, the plaintiff must prove: "(1) a breach of an indemnity contract; (2) the amount of the loss sustained; (3) the existence of facts for which there was coverage; and (4) the reasonableness of the amount paid." Fid. & Guar. Ins. Co. v. Ford Motor Co., 707 F. Supp. 2d 1300, 1313 (M.D. Fla. 2010) (citing Port Everglades Auth. V. R.S.C. Indus., Inc., 351 So. 2d 1148, 1150 (Fla. 4th DCA 1976)); Allegheny Cas. Co. v. United Constr. Co. of Cent. Fla., Inc., No. 6:12-cv-01363-Orl-36KRS, 2014 WL 440083, at *9 (M.D. Fla. Feb. 3, 2014); Brinker v. Chi. Title

---

[3] The Court, "what's bothering me here is that you stood in [LWR's] shoes, you got whatever damages they could possibly be awarded. [sic] Once that action was done, they couldn't get anything else. But what you're now asking Lewis Walker Roofing to pay is something that you could have gotten, but for some reason didn't. And I don't know the reason you didn't, but I -- I guess I have a question about whether that's commercially reasonable." Tr. at 122.

Ins. Co., No. 8:10-cv-1199-T-27AEP, 2012 WL 1081211, at *9 (M.D. Fla. Feb. 9, 2012). With respect to the fourth element, an indemnitee makes a prima facie showing that its costs and expenses are reasonable by demonstrating that it incurred and paid the sums. See Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc., No. 08-61868-CIV, 2009 WL 3878297, at *2 (S.D. Fla. Nov. 18, 2009); In re Cisneros, No. 12-10468, 2012 WL 4627833, at *2 n.4, 9 (Bankr. N.D. Cal. Oct. 1, 2012); see also Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc., 518 F. App'x 899, 903-04 (11th Cir. 2013) (awarding an indemnitee attorney's fees and expenses under an indemnity agreement because the indemnitee made a prima facie showing of its loss, which the defendant failed to rebut). "The burden then shifts to the Defendants to demonstrate that the costs and expenses are unreasonable." Grace, 2009 WL 3878297 at *2; see also Winmark Homes, 518 F. App'x at 903-04. As previously noted, the only issues remaining for the Court's resolution at this time are the reasonableness of any amounts paid by Developers to Qualex and the Firm, and the effect of any defenses raised by the Walkers.

### III. Findings of Fact and Conclusions of Law[4]

The Georgia DOC hired LWR to serve as the general contractor for a roofing project at the Valdosta State Prison. See Tr. at 14-15; see also Construction Contract. At LWR's request, Developers executed a payment bond and a performance bond, which guaranteed, respectively, that in the event LWR defaulted, all suppliers and subcontractors would be paid and the project would be completed. See Tr. at 9-10, 40-41, 44-45. In

---

[4] Although the Court has previously determined the majority of these facts to be established for purposes of these proceedings, the Court includes a brief discussion of the relevant facts and the undisputed background relationship between the parties to provide context for the Court's findings on the remaining disputed issues.

7

exchange, the Walkers, individually and on behalf of LWR, signed the Indemnity Agreement in which they agreed to reimburse Developers for all losses incurred in connection with the bonds. Id. at 5, 105, 121, 126-27. The Indemnity Agreement provides, in part, that the signatories Lewis Walker, Heather Walker, and LWR agree to:

> Indemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind of nature . . . which Surety may sustain or incur by reason of or in consequence of execution and delivery by Surety of any Bond on behalf of Principal.

See Summary Judgment Order (adopting the Report at 5).

In 2008, suppliers and subcontractors working on the Georgia prison construction project began filing claims against the payment bond. See Tr. at 10. As a result, in 2009, Developers hired Qualex to investigate the claims, and then retained the Firm to determine whether LWR had any available defenses. Id. at 67-68, 92-93; see also Trial Ex. 3: Timeline of Legal Tasks (Timeline) at 1. In 2010, the Georgia DOC declared LWR in default and filed a claim against the performance bond. See Tr. at 14. Through its investigation, Qualex determined that the Georgia DOC was at fault in preventing LWR from completing the project, and as such, the Georgia DOC had breached the Construction Contract. Id. at 93-94. Accordingly, Developers, standing in the shoes of LWR, sued the Georgia DOC for breach of the Construction Contract. Id. at 94-95; Timeline at 1.

On September 18, 2012, a Georgia trial court entered summary judgment in favor of Developers and against the Georgia DOC. See Georgia Trial Court Order. In the Georgia Trial Court Order, the Georgia court denied Developers request for attorney's fees and costs. Id. at 22-23. The Georgia DOC appealed to the Georgia Court of Appeals without success, see Georgia Court of Appeals Order, and then to the Georgia Supreme

Court, see Supreme Court of Georgia Order. As a result of the state court litigation Developers recovered $652,024.15 on behalf of LWR. See Summary Judgment Order (adopting the Report at 8).

Developers bore all costs associated with the claims on the bonds and the ensuing litigation. See Tr. at 115. Those costs included payments in the amount of $498,747.97 to bond claimants and $82,041.33 to LWR. See Summary Judgment Order at 2-3. The Court previously determined that these costs were reasonably incurred. Id. Developers also incurred obligations to both the Firm and Qualex in connection with the investigation of the dispute between LWR and the Georgia DOC, and Developers pursuit of the breach of contract action against the Georgia DOC. The Court turns now to the reasonableness of the costs incurred to the Firm and Qualex for which Developers now seeks indemnification.

Preliminarily, with regard to the overall commercial reasonableness of these expenses, Developers underwent a two-step process to review all invoices. See Tr. at 59-60. First, a senior claims examiner reviewed each invoice. Id. Next, if the examiner approved the bill, Developers would forward the invoice to the examiner's manager in California for a second review. Id. Gary Perkins, former claims examiner at Developers, handled the claims on LWR's bonds, and reviewed all invoices submitted to Developers, including those from the Firm and Qualex. The second review before payment would have been completed by Sue Moore. Id. The Court reviews the claims for indemnification as to the payments to the Firm and Qualex separately.

**A. Request for Indemnification for Work Performed by The Firm**

Developers introduced as evidence all invoices that the Firm submitted to Developers and all checks that Developers issued to the Firm. See Trial Ex. 2: Thompson

9

& Slagle, LLC (Firm's Paid Invoices). The invoices total $267,104.66, and the checks total $291,463.66. See generally id. Developers also introduced a list of the Firm's expenses, see Trial Ex. 4: Detail Cost Transaction File List (Transaction List), and the Timeline.

Developers engaged the Firm in connection with the LWR bonds in December 2009. See Timeline. Throughout 2010 and into early 2011, the Firm worked with Developers and Qualex to investigate the claims made on the bonds, determine whether Developers should tender its performance bond or takeover performance, and investigate LWR's potential claims against the Georgia DOC. See Timeline; Firm's Paid Invoices; Tr. at 93-94. In July 2011, the Firm filed suit against the Georgia DOC. See Timeline. For the next year, the Georgia DOC contested not only the claims, but also Developers' standing to bring the action at all. See Tr. at 95. Additionally, the Georgia DOC filed a counterclaim asserting that LWR was at fault and was the party who breached the Construction Contract. Id. at 95-96. Throughout this litigation, the Firm, on behalf of Developers, who was standing in the shoes of LWR, and the Georgia DOC exchanged discovery and engaged in motion practice with regard to that discovery, and in particular with regard to the Georgia DOC's failure to respond to certain requests for admission which resulted in a judicial admission that it was the party that breached the Construction Contract. Id. at 97-98. Ultimately, the parties filed cross motions for summary judgment. With regard to the breach of the Construction Contract, the Firm sought summary judgment in favor of Developers, and on September 18, 2012, the Georgia trial court granted the motion. Id. at 98; see also Georgia Trial Court Order at 24. While the summary judgment motion was pending, because trial was approaching, the Firm necessarily engaged in fairly substantial trial preparation. Tr. at 98.

In January 2013, the Georgia DOC appealed the trial court's entry of summary judgment raising the novel issue that the state of Georgia's waiver of sovereign immunity for breach of contract claims extended only to the party to the contract, and because Developers was not a party to the contract, its claim, even though brought on behalf of LWR who was a party to the contract, was barred by sovereign immunity. See Timeline; Tr. at 99. The appellate court rejected the argument and affirmed the trial court's order. See Timeline; Tr. at 100; see also Georgia Court of Appeals Order at 17.

Thereafter, the Georgia DOC sought review by the Georgia Supreme Court, and although Developers opposed the request, the Georgia Supreme Court granted the writ seeking certiorari review. See Timeline; Tr. at 100. As a result, the Firm represented Developers through that additional stage of the appellate process including briefing and appearing at oral argument. Tr. at 100. In the end, on September 22, 2014, the Georgia Supreme Court affirmed the trial court and appellate court decisions resulting in the entry of judgment in favor of Developers. See Timeline; Notice; see also Supreme Court of Georgia Order at 11. In addition, beginning in 2015, the Firm represented Developers in the instant action seeking indemnification from the Walkers and LWR. See Timeline; Firm's Paid Invoices.

The evidence reflects that the Firm charged between $185.00 and $225.00 per hour for its attorneys.[5] See generally Firm's Paid Invoices. Based on the testimony provided, see Tr. at 73-76, and in the absence of any contrary evidence, the Court finds that these rates as a general proposition are reasonable and fall within the relevant market standard.

---

[5] Although the Firm's Paid Invoices do not distinguish between partners and associates, in the Summary Judgment Order, the Court recognizes that the Firm charged between $185.00 and $225.00 per hour for associates, and $205.00 and $225.00 per hour for partners. See Summary Judgment Order at 3 (adopting the Report at 11).

11

The Firm's Paid Invoices reflect that Developers paid the Firm a total of $291,463.66 in attorney's fees and costs for the entirety of the state court litigation, including the appeals to the intermediate appellate court and the Georgia Supreme Court, as well as the filing of the instant action. See Timeline; Firm's Paid Invoices. The Transaction List indicates that $14,144.86 of this figure consists of costs, which means that the remaining $277,318.80 should consist of attorney's fees. Upon review of the evidence, the Court notes certain inconsistencies which must be addressed. As the first inconsistency, the Court notes that although the Transaction List indicates that $14,144.86 of this figure consists of costs, Developers' evidence fails to establish that the Firm charged it for $14,144.86 for expenses. See generally Firm's Paid Invoices. Specifically, the evidence does not show that the Firm billed $275.00 for "Litigation support vendors (1101.00) MLW Attorney Services Developers Surety and Indemnity Company Lewis Walker Roofing," dated July 2, 2015. See Transaction List. As the second inconsistency, the Court notes that although $277,318.80 of the amount Developers paid the Firm should consist of attorney's fees, the Firm's Paid Invoices reflect that the Firm's lawyers generated, and the Firm billed Developers, only $253,234.80 in attorney's fees. See generally Firm's Paid Invoices; see also Spreadsheet attached as the Court's Appendix. Absent a reasonable explanation, which was not provided, payment of costs or fees in excess of the amount billed would not be commercially reasonable. Thus the Court reduces the amount potentially awardable as damages to the amount actually billed by the Firm: $13,869.86 for costs, and $253,234.80 for attorney's fees.

The Court also notes an issue regarding the billable rate the Firm charged for two of its associates in May 2012. Although the Firm billed $185.00 per hour for John

Alexander, Esq. and Mr. Wolenski, both associates in April 2012, it increased their rates to $225.00 per hour in May 2012, and then reduced their rates to $205.00 for the remainder of the state court litigation. See generally Firm's Paid Invoices. Mr. Wolenski testified that he did not "have any explanation" for this billing adjustment. See Tr. at 107. The Court finds this arbitrary increase in billing rates during the month of May to be commercially unreasonable and as such finds that a fee reduction of $1,772.00 for attorney's fees is warranted. This reduces the amount potentially awardable ($13,869.86 for costs, and $251,462.80 for attorney's fees) to $265,332.66.

Turning to the potential defenses, at trial, the Walkers raised questions regarding the reasonableness of Developers' request for indemnification for its attorney's fees and costs in the state court litigation arguing that Developers should have recovered those fees from the Georgia DOC in the underlying state court litigation. See Tr. at 110-111. Counsel testified that the contract between LWR and the Georgia DOC entitled the prevailing party to attorney's fees, and that as LWR's subrogee, Developers sought recovery of those fees, but the Georgia state court denied its request. See id. at 102-06. The Georgia trial court order reflects that Developers requested $160,161.39 in costs, expenses, consultant fees and attorney's fees incurred as of that stage of the state court litigation, but the Georgia court rejected the request finding that these costs were not incurred as a result of the Georgia DOC's breach of the Construction Contract and thus not recoverable under the contract. See Georgia Trial Court Order at 22-23. Accordingly, to the extent that the Walkers argue that Developers request for indemnification of its attorney's fees and costs is unreasonable because it failed to seek these amounts in the underlying state court litigation, the Court must find this defense unavailing.

The evidence before the Court establishes that Developers retained the Firm to perform services in connection with the bonds issued to LWR. For these services Developers reasonably incurred and paid attorney's fees and costs to the Firm of $265,332.66. Pursuant to the Indemnity Agreement, Developers is entitled to be indemnified for that amount by the signatories to the Indemnity Agreement, which include both Lewis and Heather Walker.

### B. Request for Indemnification for Work Performed by Qualex

Turning to Qualex, Developers introduced all invoices that Qualex submitted to Developers, and all checks issued by Developers and paid to Qualex, see Trial Ex. 1: Qualex Consulting Group (Qualex's Paid Invoices). The invoices total $84,110.39, see id., and Developers seeks indemnification in the amount of $89,476.96.[6] Id. Mr. Mackowiak and Ms. Rondinelli testified regarding Qualex's services and billing. See generally Tr.

A representative of Developers, Gary Perkins, contacted Mr. Mackowiak in 2009 to investigate LWR's alleged inability to fulfill its contractual obligations to the Georgia DOC, and to account for all materials before Developers issued any checks on the payment bond. Id. at 10-11. As part of his investigation, Mr. Mackowiak met with the Walkers several times at their home and the LWR office, and spoke with Nancy Jackson at the Georgia DOC. Id. at 11-14. After forming an opinion that the Georgia DOC was at fault in causing LWR's inability to complete the contract, Mr. Mackowiak used the modified eichleay methodology to measure the damages that the Georgia DOC caused LWR to incur[7] and tendered a

---

[6] The Court notes that the checks payable to Qualex from Developers appear to total $190,254.42. However, Developers seeks only $89,476.96 from LWR and the Walkers in connection with their obligations under the payment and performance bonds. In light of this fact and the total of Qualex's invoices, the Court assumes that the most Developers actually paid to Qualex for work related to the LWR bonds is $89,476.96.

[7] The eichleay method is a means of determining a contractor's overhead. See Tr. at 20.

14

claim for these damages directly to the Georgia DOC. Id. at 14-21. When the Georgia DOC rejected the claim, Qualex worked closely with lawyers at the Firm to file a complaint and pursue recovery in the Georgia state court litigation. Id. at 23.

Four individuals from Qualex worked on the Walkers' case, including Mr. Mackowiak at a rate of $135.00 per hour, Ralph Argen,[8] a consultant, at a rate of $125.00 per hour, Erica M. Frazier, an administrative assistant, at a rate of $45.00 per hour, and an accountant at a rate of $45.00 per hour. Id. at 21-22. Generally, a consultant's rate varies depending on his background and experience. Id. at 25. Developers submitted evidence that the rates charged by Qualex were considerably lower than those other consulting firms were charging between 2009 and 2011 in the Florida Market. Id. at 24-25, 62. Further, Ms. Rondinelli testified that Qualex's rates were lower than the other consulting firms with whom she worked. Id. at 62.

The evidence establishes that Developers retained Qualex to perform services in connection with the claims against the bonds issued to LWR. Qualex billed Developers $84,110.39 for the services it performed. See Qualex Paid Invoices. The Court finds that it would be commercially unreasonable for Developers to pay Qualex amounts in excess of what Qualex billed to Developers for its work relating to LWR. In the absence of any evidence that the additional amounts paid to Qualex were commercially unreasonable, the Court determines that by virtue of its obligation and payment to Qualex, the maximum loss to Developers in connection with its obligation to Qualex on the LWR bonds would be $84,110.39.

---

[8] The Transcript refers to this individual as "Mr. Argeu," but Qualex's Paid Invoices reflect that his true name is Ralph Argen.

The Court finds that Developers is entitled to indemnification for this full amount. Mr. Mackowiak testified to his belief that Qualex did not charge Developers for clerical work done by Ms. Frazier, see id. at 26, and that Qualex did not charge Developers for any travel costs, see id. at 22. However, a review of the Qualex Paid Invoices suggests otherwise. Nevertheless, Mr. Mackowiak testified that it was standard practice in the industry for consultants to charge for, and be paid for, time spent traveling, id. at 31, and Ms. Rondinelli testified that it was industry standard to charge for, and be paid for, administrative tasks, id. at 63-64. As this testimony went unrebutted, the Court cannot conclude as a matter of law that it was commercially unreasonable for Developers to pay for time spent traveling or performing the administrative tasks that were included in the Qualex invoices. Thus, pursuant to the Indemnity Agreement, Developers is entitled to indemnification for the $84,110,39 paid to Qualex.

## IV. Conclusion

In sum, the Walkers entered into an Indemnity Agreement in which they agreed to indemnify Developers for any losses incurred in connection with Developers issuance of payment and performance bonds to LWR for the Georgia DOC construction project. Developers incurred the following reasonable costs as a result of the issuance of the bonds which are covered by the Indemnity Agreement:

| | |
|---|---|
| Bond Claimants | $498,747.97 |
| LWR | $82,041.33 |
| Firm | $265,332.66 |
| Qualex | $84,110.39 |

These losses result in a total loss of $930,232.35 to Developers. Developers, on behalf of LWR, recovered $652,024.15 from the Georgia DOC reducing the overall loss incurred by Developers to $278,208.20. The Walkers have breached their obligation under the Indemnity Agreement to indemnify Developers for this sum. As such, the Walkers are in breach of the Indemnity Agreement and Developers has suffered a loss as a result of the breach in the amount of $278,208.20. Pursuant to the Indemnity Agreement, the Walkers and LWR are jointly and severally responsible for this amount. Judgment is therefore due to be entered in favor of Developers and against Lewis G. Walker and Heather C. Walker in the amount of $278,208.20 for which they are jointly and severally responsible.

Before closing, the Court must comment on the unfortunate circumstances of this case. The Walkers, in good faith, sought to contract with the Georgia DOC to complete a roofing project. The Georgia DOC required LWR to obtain payment and performance bonds, which it did. What the Walkers and LWR could not have expected was that the Georgia DOC, through its unreasonable security requirements and restrictions on LWR's work schedule, would make completion of the project in a timely manner impossible. And then, having done so, would spend literally years in court refusing to acknowledge its responsibility for the contract failure. But sadly, that is what happened, and by virtue of the Indemnity Agreement, it is the Walkers and LWR, through fault not of their own, who are left "holding the bag" in that they are now left with the bill for the costs of that litigation and the associated expenses of the contract failure.

The terms of the Indemnity Agreement, which the Walkers and LWR were required to execute to obtain the bonds, demand this outcome. But it is with a heavy heart that the Court will require the entry of judgment against the Walkers. Although it is the outcome

17

that the law requires, it is not the outcome the Walkers deserve. Sadly, here, the Court must faithfully follow the law.

In accordance with the foregoing and based on these findings of fact and conclusions of law, the undersigned concludes: 1) As to Count II of the Complaint, pursuant to the Indemnity Agreement, the Walkers are indebted to Developers in the amount of $278,208.20; 2) Count I for specific performance and Count III for common law indemnity of the Complaint are dismissed; 3) The Court will withhold entry of judgment pending resolution of the Motion for Default Judgment (Doc. 29).

**DONE AND ORDERED** in Jacksonville, Florida, this 31st day of May, 2017.

*MARCIA MORALES HOWARD*
United States District Judge

lc25
Copies to:
Counsel of Record
Pro Se Parties